Oral Argument Not to Exceed 15 Minutes per Side Mr. Funk for the Plaintiff's Appellants. May it please the Court, Stephen Funk of the law firm of Retzland Andrews on behalf of the Appellants Bradley Delp and the Bradley Delp Revocable Trust, I'd like to reserve three minutes of my time for rebuttal. This is a case about a man who was deceived by the two people that he trusted most, his longstanding interest in a family business, which was his life's work. In this case, it is the defendants who engaged in bad faith conduct that caused significant damages and yet the trial court dismissed the entire case with prejudice in order to punish my client for alleged bad faith conduct that occurred four years before the litigation when he was merely trying to figure out what was going on and that ultimately did not cause any actual prejudice to the defendant's ability to defend the underlying claims. We ask that the Court reverse the sanctions order because it is based upon a series of legal and factual errors that ultimately resulted in a manifest injustice. Let me begin by addressing the issue of pre-litigation conduct. Here it's undisputed that the trial court's findings, sanctions order, were based primarily upon a finding that my client engaged in bad faith conduct in how he obtained certain emails and documents from the company's offices in 2011. But as we pointed out in our briefs, a district court does not have the inherent authority to impose sanctions for pre-litigation conduct. Rather, this court held in the Beal case that the remedy for pre-litigation conduct ordinarily must be found in the substantive law of the case. Here basically what we're asking is that the court find that all of the claims, both the pre-litigation conduct, to be decided by a jury at trial based upon the substantive law of the case and not by the trial court. In this case, we've also alleged bad faith conduct by the defendants and our remedy is not sanctions but our claim for breach of fiduciary duty. Defendants have also alleged a claim for the alleged theft of documents. They've alleged it in the Lucas County Court of Common Pleas. But nevertheless, it is a claim that could and should have been brought as a counterclaim in this case and decided by a jury based upon Ohio law, which is the substantive law of the case. What happened here is that the trial court essentially engaged in a partial trial of only one side's claims that usurped the jury's role by making factual findings about the merits before any discovery based upon a limited review of the evidence. And then essentially usurped the jury's fact-finding function and wrongfully imposed sanctions based upon a claim that should have been decided by the jury. Am I correct in my assessment that your client doesn't challenge the bad faith finding? Why do I think that's true? Well, actually, Your Honor, we do challenge the bad faith finding. We have part of our brief, we have a specific section that deals directly with some of the findings that the trial court made regarding bad faith conduct, which were based primarily on... I know that that's part of the background or your argument, but where's the challenge itself? Right. We're challenging that the findings are not supported, there are clearly erroneous mistakes based upon clearly erroneous mistakes on a number of key issues, which are all dealt with in our argument. And we also are challenging the fact that the alleged bad faith theft of documents was pre-litigation conduct that was not subject to sanctions. I don't know where I got this, Mr. Funk, but did the district court decide that there wasn't really a challenge to the bad faith? It doesn't make sense to me, but that's what I have in my mind. I think the appellees raised that in their... They argued that in their brief. They argued that. And then on reply brief, I did point out that we do challenge the bad faith conduct. But one of the things that they argue in their brief is that the trial court also ultimately found at the hearing that he did not believe Mr. Delph's explanation about how he obtained the documents. When we say Mr. Delph, this is confusing. Bradley Delph, yeah. Okay, let's use first names. Yeah. Do we agree on that? Yes. Yes. Thank you, Your Honor. The key part about that, and we specifically address that in our brief, is that the discrepancies that were alleged related to things that were not material to ultimately the merits of the case, and they were based upon erroneous mistakes about the actual evidence. But more importantly, all of those credibility findings arose in the context of evaluating the evidence relating to pre-litigation conduct. And that was really the primary basis for the sanctions. I mean, that's where you started your argument. Right. That's just... That's groundless. We don't have any support for doing that. But that's precisely what Judge Zuhari... That's where he went for his assessment. Right. When you say it's groundless, you mean the district court's finding it's groundless? No, you're saying... Yeah, I... You're right. You're saying it's groundless for the court to have done what it did. That's right, Your Honor. The inherent authority of the court really relates to the supervision of the judicial proceedings, and that's what the Supreme Court held in Chambers. What the district court did in this case was it essentially got involved in deciding the underlying merits of the case, the factual whether... How we obtained documents prior to litigation. Well, the documents related to or would pertain to the litigation, so why... How did you diminish them by continually referring to them as pre-litigation things? I mean, these things were relevant and pertinent to all these disputes between the brothers. Because it all occurred three years before the litigation began, and the inherent authority really relates to the supervision of the judicial proceeding, not the conduct that ultimately can give rise to a potential cause of action, which... One of the things Judge Clay's point, I suppose, is like mine, is the court was persuaded that it was now unfair because your client had accessed the other side's litigation strategy in a duplicitous way, sneaking in and getting into a computer. So there we have it. Start talking about that way, maybe. Yes, Your Honor. And that actually, I think, gets to what's mostly egregious about this ruling. Because in this case, there's actually no evidence of any actual prejudice to the defendant's ability to defend the underlying merits of the claims. This is a claim that really related to whether or not my client had agreed to sell his interest in the company. That's what was material to the case. There's no evidence that he actually accessed any documents or viewed any emails that were either privileged. The trial court found that most of the documents were not privileged. And more importantly, he never found that any document was prejudicial. So what you have here is a situation where there is no actual prejudice. If there had been a document that he saw that was prejudicial, the trial court could have issued a preclusion order saying you cannot use that document at trial or you cannot use any information from that document. We don't have that. So what the trial court then does is use the absence of evidence as evidence to therefore infer that the only possible remedy, therefore, is dismissal because we don't know what other documents he may have seen. It wasn't privileged. It wasn't due to any lack of trying or attempting on behalf of your client to find items that would be prejudicial to his adversary. He certainly did make every effort to obtain and find things that would be prejudicial. I think the judge in his ruling did talk about how the sanction was necessary to protect and vindicate the purposes of the judicial process. So there's ample legal basis for what the judge did. If the evidence would support it and this four-factor test that was utilized was satisfied... Well, Judge, I would respectfully disagree because in this situation, we don't actually have any evidence of actual prejudice. So what the judge did was he speculated that there may be some other document out there that could have been prejudicial. The problem with that argument is there is no destruction of evidence in this case. All these documents are in the possession of the defendants. If there was some document out there that was prejudicial that somehow harmed their ability to defend whether or not my client sold his interest in the company, they could have produced that document for in-camera review and had the trial court actually conduct an analysis of whether or not that evidence would have caused actual prejudice to their ability to defend the underlying merits of the claims. In this case, the trial court didn't engage in any analysis of the underlying merits of the claims. He just said, well, there may be some other document out there that he reviewed that's prejudicial and we don't know what it is. So what he's done is he's taken the absence of evidence as the basis for imposing the most extreme remedy of dismissal that's flipping the entire analysis on its head. If there had been some prejudicial document, the remedy would have been to preclude the use of that document. But there wasn't any. None of the documents were privileged. The two documents that were referenced in the decision, the case map document and the ex parte mediation statement, neither one of those documents were presented by the defendants for review. Well, what would you say about the findings of the court in imposing the sanction in that the court made an express finding that your client has stolen the information to get an advantage in the case, why wouldn't that be something appropriately weighed by the court in making its decision regarding sanctions? Two answers to that, Your Honor. First, it was pre-litigation conduct, so it's beyond the scope of the court's authority. But secondly, there was no evidence that he in fact got an advantage. There's no evidence that he in fact got an advantage. But that was his purpose and intent, to go and obtain an advantage by stealing things. But ultimately, the purpose of sanctions is to remedy the prejudice that's caused by the alleged misconduct. This court has always analyzed it in the sense of trying to tie the remedy to remedying the prejudice. Here, if you have no actual prejudice, the remedy should not be the most extreme remedy of dismissal, which is something that this court has said should only be done in extraordinary circumstances. That's where we think this decision really crosses the line. A court should not dismiss a case unless you can show, with a clear showing, that the defendants are unable to defend the underlying merits of the case because of some destruction of evidence or some other misconduct. In this case, we don't have that. We don't have any evidence that they were prevented or are unable to defend the underlying merits of the case. And that's why this case should be decided on the merits and not based upon a partial finding of certain limited conduct. Remind me, what are the merits? What's the question presented? There's a struggle for continued ownership of the company. Who wanted to keep the company? Right. Or did anybody? It's a 50-50. Ceiling shares? Family owned business. Each side owns 49%. The underlying merits relate to whether my client actually sold his interest. We argue that some of the documents were backdated. To his brother? Well, actually, it was supposed to go to an independent trust, a TDC trust. Right. Actually, the trust agreement itself was allegedly created in July 2008. But when the attorney actually notarized and said that it had been signed in 2008, when in reality, they even admitted... Who was the lawyer supposed to represent? Is that part of this? The lawyer is changing sides? Well, he was representing the company and he was also representing each of the individual brothers. Did the father pass this company to these sons? Is that how this worked? And then made sure there was a certain number of shares or percentage of shares that would be held in trust so that there would... To adjust this kind of problem. Right. But the underlying merits, ultimately, what is going on in the underlying case is whether or not he had sold his interest in the company and whether or not the defendants engaged in bad faith conduct by basically documenting a sale that didn't actually exist. Is it supposed to be a secret sale? I mean, it's only secret in the sense that it should have been fully disclosed by the negotiating parties. The other brother. Right. And the brother never... And this is testimony in the record that he never signed the agreement and he never agreed on a purchase right. This isn't precisely what's briefed. I get that. That's right. And I guess my main point on this is that, obviously, the question of whether the district court ultimately abused its discretion, we think that this case clearly crosses the line because this is a very unusual circumstance. I would agree that abuse of discretion is the standard, even though it seems like your argument is more... It's actually more substantive than that, that he missed the boat entirely. That's right. And this court has held that if there is an error of law, that is an abuse of discretion. Well, yeah. So we ask that the court reverse and we ask them to remand to allow both the claims and the counterclaims to be decided by a jury and not by the district court. Thank you. I reserve the rest of my time for rebuttal, if I have it. Yes, you have your rebuttal time. May it please the court. Thomas Dillon on behalf of Appalese. I want to address a couple issues, Judge Cook, that you raised. Yes, this was... There are a series of businesses that were passed on from the father and there have been a number of sales from Brad Delp selling his interest to Cleves Delp or Cleves Delp-related entities. They're trying to separate from one another, I take it. They ought to. And they did. Okay. And this lawsuit only dealt with two of those companies. Okay. Only two of them. And the interesting part about that is he did not... Brad did not name TDC Trust as a party. So he can't recover those shares of stock through this lawsuit. We don't have... It's like it's a revelation that should resonate and I'm not getting it. Okay. Well, if you're trying to undo a sale, you ought to name as a party to the lawsuit the buyer of the shares of stock. Okay. And he didn't because... Oh, he didn't name the buyer. Yeah, he didn't name the buyer. And he didn't because this was a trust that Brad created. Brad was the trustee and he did it for tax purposes. It's a defective grantor trust is how he did it. The other thing is, is there a dispute about whether or not he sold Dell Hold, which is the other company in here? Well, he put it on his tax return that he sold it. Is this in evidence? It is in evidence. It's a three-day evidentiary hearing. Correct, Your Honor. Was there anybody... Could anybody agree what the purpose of that was? Sure. It's deciding these motions. Which ones? Both? Sure. It was the... This hearing took place because Brad requested it. All right. And I'll note that Brad argues that Judge Zuhari erred by even having an evidentiary hearing when, in fact, Brad... We found out Brad took the documents... We found out about the documents in February of 2015. The judge stayed everything and allowed us to do discovery. And we took his deposition and he asserted his Fifth Amendment rights. So we didn't know where or when he had obtained those documents. He then moves for the appointment of a special master, for some reason, to look at these documents. And only then, in August, does he file what Judge Zuhari refers to as the combo motion, which was a motion to supplement the record with his affidavit. And that provided at least Brad's version of what happened. He asked for an extension of time. He asked for permission to review the documents that he produced in discovery. So the point here would be the merits were pursued by Brad's side, you would say. Yes, absolutely. But he requested the hearing at the very same time he first disclosed his story to the judge. I took these documents before I filed the lawsuit. So we think it's disingenuous that you ask Judge Zuhari for a hearing and then claim that he committed error by actually granting that combo motion in its entirety, allowing the affidavit into evidence, allowing the hearing to go forward. Furthermore, I'd like to spend just a little bit of time focusing on some of the underlying facts that we weren't able to fully flesh out in our brief, given the page limitation. And that goes to this statement that we keep hearing. The record is clear that Brad's bad acts occurred prior to his filing the lawsuit. That's the underlying premise we keep hearing about. Well, there were two exhibits at the hearing on sanctions. Exhibits O and P. And those are also emails from Cleve's inbox. Brad was not a sender. He wasn't a recipient. He wasn't copied on it. Nobody affiliated with him was copied on that email. Brad, when he submits his affidavit saying, I'm going to tell the truth, I'm going to tell you what happened, he doesn't mention those emails. At the sanctions hearing, we ask him about that. Where did you get them? How did you get them? When did you get them? His answer, I don't know. I can't recall. I can't tell you. He provided absolutely no evidence. So at least as to those documents, when were they taken? I don't know. The argument we heard this morning, and you heard it too, was that the judge was too involved with pre-litigation conduct. And now you're telling us you're speaking about pre-litigation conduct and how it was brought to the table by this party. Correct. Correct. I would also like to explain there were a number of emails flying around at that sanctions hearing. But they can be grouped into two categories. One set of emails, they have a print footer on that, on the bottom. And that says when the email of Cleaves was printed. And those with a print footer were marked as Joint Exhibits 3 and 5. And Brad's story with regard to those emails were, he went to Cleaves' computer, he jiggled the mouse, he did not enter into a password at all. It automatically opened up to the inbox, Cleaves' inbox. He did a search. And every single document, every single email he looked at, he printed in its entirety and produced in its entirety. He claims he did not open up a single attachment. And he did not open up any other programs or look at any other information on Cleaves' computer. Just the inbox. We asked, there's some problems with that as affidavit. To begin with, if you look at Joint Exhibits 3 and 5, they're missing pages. So the question to Brad was, well, if you printed everything, why are there missing pages? He can't explain. Also in that exhibit. We read this in your brief somewhere, right? I don't think we went through it in detail. That's why you had the expert who said, no, you have to have a password, right? Correct, the password. My point is that we have some emails that came from Cleaves' inbox that when Brad hit the print button, guess what happened? It put a print footer on it. Right, I get it. And so your point is, he didn't produce everything. That's the argument. There are missing pages. There's missing pages. There's also in that exhibit something that's not an email. There are two documents in that exhibit. So he's not telling the truth about what he did. We know that objectively. In addition, we've got this whole other set of emails. Mr. Funk's argument is, so what? The court was off the reservation in dismissing this case because he's lied to the court. I don't think Judge Zuhari had every right to make sure that he could hold a fair proceeding. And that's what he was doing. And Brad Delp said, give me a hearing because I'm going to tell you the truth. He said that. I'm going to tell you the truth. And he didn't. Your argument is that justified this extreme sanction, that the contumacious conduct justifies. It's an extreme remedy. We will agree. You would agree. It's the most extreme. And the other issue is, we don't know what he took. And my point is, going through some of these facts in a little more detail, and there's another one that I find interesting, and you may find it interesting, and it has to do with that print footer. There's all these documents, Joint Exhibits 2 and 4, that Brad claims Cleves printed out, and he left in a conference room. Just to follow up on what Judge Cook is saying, I guess your opposing counsel is arguing that the procedure followed by the court was legally inappropriate. And so I guess your response would address the legal justification, the legal authority for imposing sanctions under these circumstances, if you wanted to. I'm not saying you have to. It's sort of your argument here. If you wanted to address more of that, that might be helpful. Certainly. Well, the reality is, we had a hearing, and we were told we were going to learn where these documents came from. That was the purpose of the hearing and the request for the hearing. At the end of the three days of testimony. When he said, I'm going to tell you why would the court, why is anybody interested in why he's going to tell the truth about what? About where he obtained the documents. Where he obtained them. But they are the reason we're actually in court. And whether or not those were all the documents he obtained. Okay, sure, sure. And what else he did. And at the end of the hearing, Judge Zuhari and everybody else sitting in that courtroom couldn't figure out what Brad took, how many times he broke into the building, how many times he broke into the computer system, what information he actually had. Because you couldn't believe anything he put in his affidavit or his testimony. Do you have any additional legal authority supporting what the judge did? Or do you just want to rely on what you have in your brief? I have no new case law. While we cited the Microsoft case, which from the Ninth Circuit that we think is very helpful, and the Eagles Hospital case, which was very helpful, I will say that the discussion, this pre-litigation term that comes from Chambers versus NASCO, that actually comes from Justice Kennedy's dissent. It's not even in the opinion. And he points out, yeah, you have to focus on the party's primary conduct, that is the subject of the litigation. In Chambers it was a breach of contract. Here it was, did Brad sell his interest in these companies? There were no claims against Brad. There were no counterclaims. There was nothing against Brad. There was no underlying conduct that the court could look at with regard to the sale of those companies and say, Brad, I'm going to punish you for what you did or didn't do with regard to the sale. So this pre-litigation notion is just not recognized in the case law. But, I mean, this is distinguishable, at least as I'm understanding it, inasmuch as Brad wanted to bare his soul and explain to the court his stance or his position about the sale. And that's how we got into all this. And then the court went to, if I'm understanding the argument, then the court went to, you know what, you're a liar and a thief. And as he said, pox on all your houses, both your houses. It really started with a deposition. And our request to ask Brad, where did you get these documents that don't belong to you, communications from me to my client, with all types of information in it. And that's when he took the fifth. And then in his combo motion he undid his assertion of the fifth and said, I'd like to give you this affidavit and I'd like to have a full record in an evidentiary hearing. And Judge Juhari says, okay, I'll give you what you wanted. And then he shows up at the hearing and we establish that the affidavit is false in almost every respect. And so was his testimony. I will talk a little bit in issue rage that there was no prejudice. I disagree completely with that. I mean, the judge talked about that extensively in his opinion, the information that Brad had obtained. And he also had obtained attorney-client communications. There was no, Judge Juhari simply said, not every single document was attorney-client communications. But he found that there were attorney-client communications. Does this address the primary case or the later motion for the fees that were denied? The primary case, yes. Do you want to talk about the fees being denied or not? Well, we asked that as part of sanctions in our original sanctions motion when Brad had asserted the Fifth Amendment and all we had were negative inferences. We asked that be considered. And the judge denied that, as was his right. Brad testified to what he thought about these documents that he obtained. And he said, both in his affidavit and on the witness stand, he said the only reason he stopped looking at the emails was because he had seen enough. These emails were so meaningful to him and troubling to him and the documents so troubling to him. He was disgusted. He said he wanted to vomit. He went in there and he admitted, why were you looking at these emails, Cleve's inbox? He wanted to find evidence of this conspiracy that he had envisioned in his head. And at the end, he found it. At least in his mind, he had found it. And our Exhibit A at the hearing was the first letter that started this whole thing. And it was a letter from Brad's first attorney out in Arizona to Cleve's. And it really talked about, you're interfering with my client relationships and you're not giving me all the investment revenue. If you compare that to what the complaint looks like, it really transformed. And the complaint now is really this whole conspiracy theory. So my time is up. To wrap up, we'd ask that the Judge Zaharie's decision be affirmed. Thank you. Thank you very briefly. Throughout their entire argument, I didn't hear anything that specifically discussed how they were actually prejudiced in their ability to defend the underlying merits of the claims. And that's really, I think, the key thing here. He talked about the judge discussing prejudice. But again, the judge did not find, he found that most of the documents were not privileged. He then never found that any of those documents, including Exhibit P and O, there wasn't even discussed in the district court's opinion. How do you keep leaning on the prejudice argument when that wasn't the only basis for the judge's decision? The court was talking about making the decision that the court made because the conduct was so egregious. Well, again, I think that whether, if you want to make the question of deciding whether the court should have granted the most extreme remedy of dismissal, the court can look at one of the key factors is prejudice. Now, if you want to say that because of the conduct was so egregious, that standing alone would justify dismissal, I would argue that that is not the case in this particular case because the alleged testimony that he thought was incomplete related to how he got the documents. But there is, the thing that I'm focused upon is this strategy, litigation strategy. I mean, he took, it looked to me like Judge Suhari took a great deal of comfort in saying, that's prejudicial. Again, and I think that that, on that. Your argument is it had to be played out. But it strikes me maybe that he had a grounds there to say, well, litigation strategy. Now, it's three years earlier, is your argument, isn't it? Right, that's right. But a litigation strategy strikes me as pretty patently a prejudicial feature. But again, I think that if you want to say you can assume it's prejudicial, that's one thing. But I don't think that there was evidence by which to logically make that assumption. Because in this particular case. I made it illogically, boom. Well, I mean, I think that you have to look at the evidence. And the district judge had all the ad issue documents and looked at them and didn't find any of them to be prejudicial. So what they did was they took for the absence of evidence and made the next leak to say, therefore, because we. Is there a strategy document? This is how we'll approach this case. Well, I think there was a reference to a case map document that was actually not attached. So there really wasn't the evidence that it was seen. But even if it was seen. No, he didn't print that. Right, the defendants would have had that document in their possession. They could have presented that to the district court for in-camera review. It wasn't there. But they didn't present it. And they bore the burden of proof on this issue. Now, regarding the request for the evidentiary hearing, you have to look at it in the context. And the context was that there was a Fifth Amendment privilege that was being withdrawn. The evidentiary hearing was, in many respects, trying to negate the negative inferences from that. But ultimately, the point is that the evidence that was presented all showed that the documents were obtained in 2011. OK, thank you, Your Honor. My main point, though, is that we did not waive any arguments. What we argued in our briefs was that all the documents related to 2011 before litigation occurred, and there was no misconduct during the litigation, no violations of any court orders. And that was really the purpose of explaining that in the hearing. And we ask you, the court, to reverse. We do believe this crosses the line and that the court should direct the district court to decide the case on the merits by the jury, not through the imposition of sanctions. Thank you. And the case is submitted. You may call the next case.